Lynn G. WALCK, Plaintiff on behalf of himself and representatively on behalf of himself and others similarly situated,

v.

AMERICAN STOCK EXCHANGE, INC. and New York Stock Exchange, Inc.

Civ. A. No. 77–140.

United States District Court, E.D. Pennsylvania.

May 15, 1981.

Opinion on Motions to Amend and to Dismiss Dec. 18, 1981.

Edwin P. Rome, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff.

Joseph A. Torregrossa, Morgan, Lewis & Bockius, Philadelphia, Pa., Peter A. Copeland, Russell E. Brooks, Milbank, Tweed, Hadley & McCloy, New York City, for New York Stock Exchange, Inc.

Raymond K. Denworth, Jr., Edward M. Posner, Drinker, Biddle & Reath, Philadelphia, Pa., Banks Brown, John J. Loflin, Lord, Day & Lord, New York City, for American Stock Exchange, Inc.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

The defendants, American Stock Exchange, Inc., (AMEX) and the New York Stock Exchange, Inc. (NYSE), have moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings dismissing the first, third, fourth, fifth and sixth counts of the complaint. The defendants have also moved pursuant to Fed.R.Civ.P. 56(b) for summary judgment dismissing the second, third and fifth counts of the complaint. The rule 12(c) motion asserts that the first, third, fourth, fifth and sixth counts fail to state a claim upon which relief can be granted while the rule 56(b) motion on the second, third and fifth counts assert that they are time-barred by the applicable limitations period.

The motions raise interesting and significant questions concerning the judicial implication of a right of action against a national securities exchange under certain sections of the Securities Act of 1933 [1] and the Securities Exchange Act of 1934.[2] Some of these questions have yet to be resolved by either the Third Circuit or the Supreme Court. The Court heard oral argument on February 3, 1981, a transcript of which was filed on February 27, 1981.[3] After careful

---

1. 15 U.S.C.A. §§ 77a–77aa (1971 & Supp.1981) (hereinafter the "Securities Act").

2. 15 U.S.C.A. §§ 78a–78kk (1971 & Supp.1981) (hereinafter the "Exchange Act").

3. Docket Entry No. 127.

consideration of the issues presented, the Court renders the following Memorandum and Order.

## I. FACTUAL BACKGROUND

In 1953 the named plaintiff,[4] Lynn G. Walck, established a stock brokerage account with a New York brokerage firm—"Edwards and Hanly." During the relevant time period Edwards and Hanly was registered with the Securities Exchange Commission as a broker-dealer under the Exchange Act and was also a member firm of AMEX and NYSE. In 1959, Walck opened a margin account with Edwards and Hanly. Prior to that time, from 1953 until 1959, Walck's account with Edwards and Hanly had consisted solely of cash. The margin account was established at the prompting of Edward J. Kelly, who was a representative of Edwards and Hanly.

Between 1959 and 1973, Walck made deposits into his margin account with Edward and Hanly totalling approximately $100,-000.00. Between 1969 and 1973, again at the recommendations and urging of Edwards and Hanly, plaintiff liquidated all his security holdings in order to purchase on margin 32,300 shares of Trans-Lux Corporation common stock at prices ranging between $44.50 and $8.00 per share at a total cost of approximately $384,000.00. At no time, during this relevant period, did Kelly or Edwards and Hanly ever explain to the plaintiff what a margin account was or how it worked.

The price of the Trans-Lux stock from 1969 to 1973 fluctuated, however the general trend was downward. Due to this downward trend, plaintiff's account became undermargined and on May 21, 1973, Edwards and Hanly sent to the plaintiff a telegram informing him that his account was undermargined in the amount of $43,000.00 and that if plaintiff did not immediately deposit that amount into the account, Edwards and Hanly would liquidate some of his securities to cover the deficiency.[5] The plaintiff informed Edwards and Hanly that he did not have additional funds to deposit. Additional notices were sent to the plaintiff in June, August and September of 1973 that his account was undermargined. Finally, in January of 1974, Edwards and Hanly liquidated the plaintiff's account, selling the Trans-Lux stock at $2.00 per share in an attempt to meet the plaintiff's margin deficiency. After sale of the stock the deficiency in the plaintiff's account remained at approximately $108,000.00.

As a result of the foregoing, Walck sued Edwards and Hanly (and Kelly) in this Court—*Walck v. Edwards and Hanly and Edward Kelly,* Civil Action No. 74–664.[6] The plaintiff alleged in that action that the defendants, in handling his account, had violated § 17(a) of the Securities Act and §§ 7, 10 and 15 of the Exchange Act, and the rules promulgated thereunder. The plaintiff also alleged a common law tort and breach of contract. The relief sought was $100,000.00 compensatory and $500,-000.00 punitive damages, as well as a decla-

4. On July 1, 1977, the plaintiff moved for class action determination, *see* Docket Entry No. 12. On October 22, 1977, this motion was granted. The following class was certified.

> All customers who maintained accounts with the stock brokerage firm of Edwards and Hanly and who purchased, caused the purchase of or where caused to purchase the common stock of the Trans-Lux Corporation through the facilities of Edwards and Hanly during the period January 1, 1969 through and including January 16, 1974.

Docket Entry No. 22.

5. The complaint in the Edwards and Hanly action, No. 74–664, *see* note 7 *infra* and accompanying text, relates that on May 24, 1973, the

Trans-Lux stock closed at $6.25. Walck's margin account at that point was below the 25% minimum maintenance required (at that time) by AMEX rule 462 and NYSE rule 431.

6. The background facts related in Part I of this Memorandum have been gleaned from the complaint filed in Lynn G. Walck v. Edwards and Hanly and Edward J. Kelly, Civil Action No. 74–664 as well as the complaint filed in this action and also certain discovery which has taken place in both cases. For purposes of these motions the factual allegations contained in these pleadings will be accepted as true and will be construed in the light most favorable to the plaintiffs. *See, e.g., Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir.1977).

ration that the plaintiff did not owe Edwards and Hanly the $108,000.00 deficiency.

On September 13, 1976, Edwards and Hanly filed a Chapter XI petition in bankruptcy. On September 15, 1976, the plaintiff's action against Edwards and Hanly was stayed indefinitely by the bankruptcy court. The present action against the two exchanges was instituted on January 13, 1977. A recitation of the circumstances leading up to the Edwards and Hanly action was prompted due to the similarity of operative facts between that case and the present one. The plaintiffs' claim against the defendant-Exchanges arises from the same circumstances. Basically, the present plaintiffs are alleging that the Exchanges "aided and abetted" Edwards and Hanly's alleged wrongdoing.

In the First Count of the Complaint (¶¶ 46–68) plaintiff alleges that the NYSE and AMEX are liable under § 6 of the Exchange Act[7] for violating NYSE rules 405 and 431 and AMEX rules 411 and 462 in connection with the brokerage accounts held by the plaintiff and the class members with Edwards and Hanly. The Second Count (¶¶ 69–74) alleges a violation of Exchange Act § 9(a)[8] in that plaintiff claims that Edwards and Hanly induced the plaintiff and others similarly situated to purchase large amounts of Trans-Lux stock in order to create the appearance of active trading in the stock and then prevented the liquidation of the plaintiff's and class members' margin accounts in order to artificially stabilize the market price of the Trans-Lux stock. Plaintiff alleges that the defendants were aware of this activity on the part of Edwards and Hanly and substantially assisted Edwards and Hanly in carrying out these illegal activities.

Count Three (¶¶ 75–79) alleges a violation of § 17(a)[9] of the Securities Act and § 10(b)[10] of the Exchange Act and rule 10b–5[11] promulgated thereunder. Plaintiff claims that the defendants knowingly withheld facts pertaining to the Trans-Lux stock transactions and that their actions constitute common law fraud and a violation of the aforementioned provisions. Count IV (¶¶ 80–82) alleges a violation of the margin requirements of § 7 of the Exchange Act[12] and Regulation T[13] promulgated thereunder. The Fifth Count (¶¶ 83–84) alleges the use of "manipulative, deceptive, fraudulent and fictitious devices to induce, and to attempt to induce, purchases and sales of stock traded 'over the counter'" in violation of Exchange Act § 15(c).[14] Finally, in the Sixth Count (¶¶ 85–87), plaintiff alleges a common law breach of contract.

## II. DEFENDANTS' MOTION

As previously stated, the defendant-Exchanges have moved for judgment on the pleadings[15] dismissing the first, third, fourth, fifth and sixth counts of the complaint arguing that the claims asserted in those counts are not legally cognizable. The defendants have moved for summary judgment[16] on the second, third and fifth

---

7. 15 U.S.C.A. § 78f (1971 & Supp.1981).

8. 15 U.S.C.A. § 78i(a) (1971 & Supp.1981).

9. 15 U.S.C.A. § 77q(a) (1971 & Supp.1981).

10. 15 U.S.C.A. § 78j(b) (1971 & Supp.1981).

11. 17 C.F.R. § 240.10b–5.

12. 15 U.S.C.A. § 78g (1971 & Supp.1981).

13. 12 C.F.R. § 220.1 et seq.

14. 15 U.S.C.A. § 78o(c) (1971 & Supp.1981).

15. Fed.R.Civ.P. 12(c) states:
(c) Motion for Judgment on the Pleadings. After the pleadings are closed but within

such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

16. Fed.R.Civ.P. 56 provides in pertinent part:
(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary

counts of the complaint arguing that the claims asserted in those counts are time-barred. The Court will address the motions for summary judgment first.

Count two of the complaint is brought pursuant to § 9(a) of the Exchange Act. Section 9 contains its own statute of limitation set forth in subsection (e):

No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.[17]

Defendants point to January 9, 1974, as the date of the last securities transaction involving plaintiff's account—the date on which Edwards and Hanly liquidated the account.[18] Since this action was commenced on January 13, 1977, defendants contend that the § 9(a) claim contained in Count Two is time-barred. Plaintiff responds to defendants' position that this claim is untimely by arguing that the limitation period discussed above is subject to federal equitable tolling principles.[19] Plaintiff's position raises two questions: First, is the federal equitable tolling doctrine applicable? Second, if it is applicable, then are

there disputed factual issues pertaining to when the plaintiff knew or, in the exercise of reasonable diligence, should have known of defendants' fraudulent activities thus precluding summary judgment?

In resolving the first question, the Court rejects defendants' contention that equitable tolling is inappropriate as to § 9(a) due to the "built-in" tolling provision of § 9(e) which "was intended to impose an absolute bar to claims more than three years old."[20] Federal limitations periods, whether built-in to a statute providing for substantive liability or not, are subject to equitable tolling. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1974), *reh. denied,* 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974); *see also Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Concluding that the doctrine applies, however, does not end the inquiry as to the timeliness of the claim contained in the second count. The second question is whether the actual application of the doctrine to the facts of this case results in a tolling of the limitations periods; and concomitantly, whether that question is even capable of resolution

judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. The Court accepts the factual allegations of the complaint and construes them in the plaintiff's favor. Indeed, defendants agree "that for purposes of this motion 'all facts contained in the complaint and every inference fairly deductible therefrom, taking into consideration any factual information the Court can take judicial notice of, which includes the record herein,

should be treated as admitted and proved, viewing the same in the light most favorable to the plaintiff.' *Melo-Sonics Corp. v. Cropp,* 342 F.2d 856, 858 (3d Cir.1965)." Defendant Exchanges' Reply Memorandum, Docket Entry No. 126 at 3.

17. Plaintiff concedes that the § 9(a) claim is governed by the limitations period contained in § 9(e). *See* Plaintiff's Answer To Defendants' Motion For Judgment On The Pleadings And For Summary Judgment, Docket Entry No. 125 at 58 n. 7 (hereinafter "Plaintiff's Memorandum").

18. *See* Memorandum Of Defendants New York Stock Exchange, Inc. And American Stock Exchange, Inc. In Support Of Motion For Judgment On The Pleadings And For Summary Judgment Dismissing The Complaint, Docket Entry No. 122 at 51 (hereinafter "Defendants' Memorandum").

19. *See* Plaintiff's Memorandum at 58.

20. Defendant Exchanges' Reply Memorandum, Docket Entry No. 126 at 14.

**1056**

at this stage of the proceedings in the context of a summary judgment motion.[21]

 Under the equitable tolling doctrine, when fraud is concealed the limitations period is tolled until the plaintiff becomes aware of the fraud, or should have become aware of it. *Hochfelder v. Midwest Stock Exchange,* 503 F.2d 364, 375 (7th Cir.), *cert. denied,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); *see also Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Where *active* concealment is present then the statute is tolled until actual discovery. *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir.1975). In paragraph 45 of the complaint plaintiff alleges:

> All of the aforementioned facts and circumstances were actively concealed by Defendants and Edwards & Hanly from Plaintiff and others similarly situated who could not, as a result, have discovered same. Only as a result of discovery proceeding by subpoena in the action entitled *Walck v. Edwards & Hanly,* E.D. Pa., Civil Action No. 74–664, were these facts and circumstances able to be discovered.

Plaintiff contends that the invocation of the federal equitable tolling doctrine via the allegation contained in paragraph 45, *supra,* raises a genuine issue of material fact as to when the defendants' involvement in the fraud perpetrated against the plaintiff and the class members was discoverable. *See* note 21, *supra.*

 As the moving parties, the defendants herein have the burden of convincing this court that there is no genuine issue of material fact with regard to when the wrongdoing on the part of the Exchanges was discoverable, and that they are entitled

to judgment as a matter of law. *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979). Defendants argue that there are no factual allegations supporting the claim of active concealment other than the "conclusory, self-serving allegation"[22] contained in paragraph 45 of the complaint, quoted above. Furthermore, defendants assert that the circumstances leading up to the Edwards and Hanly action, commenced on March 19, 1974, put the plaintiff on "inquiry notice" as to the Exchanges' potential involvement.[23]

> Plaintiff and his counsel must have known by March 19, 1974 (1) the alleged facts which the Exchanges allegedly did not disclose to plaintiff, and (2) the facts which the Exchanges allegedly had a duty to disclose to plaintiff. Thus, even if the Exchanges had wanted to fraudulently conceal from plaintiff their alleged omissions and nondisclosures, plaintiff and his counsel nevertheless knew or should have known what they were by March 19, 1974.[24]

The above points argued by defendants concern factual issues and the Court is in agreement with the plaintiff's contention that they "are *not* susceptible to the drawing of *one and only one* factual inference,"[25] *i.e.,* that plaintiff knew or, in the exercise of reasonable diligence, should have known of the Exchanges' involvement prior to March, 1976.[26] Defendants have not convinced this Court that this case is an exception to the general rule that "[l]imitations issues ordinarily require factual determinations and are best left to trial for resolution." *Kroungold v. Triester,* 407 F.Supp. 414, 419 (E.D.Pa.1975), *citing Tomera, supra* at 510–511. Accordingly, de-

---

**21.** Plaintiff's argument, although focusing on the question of whether the applicable time period is tolled, places primary emphasis on the concomitant question of whether this issue is susceptible of resolution in the context of a summary judgment motion arguing "that invocation of the federal equitable tolling doctrine raises a genuine issue of material fact thereby making summary judgment inappropriate." Plaintiff's Memorandum at 66.

**22.** Defendants' Memorandum at 55.

**23.** *Id.* at 57.

**24.** *Id.* at 58.

**25.** Plaintiff's Memorandum at 68.

**26.** Plaintiff contends that it was not until March, 1976, when in response to a *subpoena duces tecum* in the Edwards and Hanly action, they obtained documents which for the first time implicated the exchanges. *Id.* at 66.

fendants' motion for summary judgment on Count Two of the complaint will be denied.

Defendants have also moved for judgment on the pleadings dismissing counts one, three, four, five and six of the complaint. The Court will now address that motion.[27]

In the first count of the complaint plaintiff has sued the Exchanges under § 6 of the Exchange Act for failing to enforce NYSE Rules 405 and 431 and AMEX Rules 411 and 462 which the defendants "knew or in the exercise of reasonable care should have known"[28] were being violated by Edwards and Hanly. Defendants have moved for judgment on the pleadings on this count contending that a private right of action is not expressly granted in § 6 and this Court should not judicially imply one.

Defendants are correct in asserting that Congress has not expressly granted a private right of action for damages in Exchange Act § 6. The inquiry is thus whether one should be implied. This question was first answered affirmatively by the Second Circuit in *Baird v. Franklin*, 141 F.2d 238 (2d Cir.), *cert. denied*, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). Since the *Baird* decision, some thirty-six years ago, numerous cases have reaffirmed the existence of a private right of action under § 6. *See, e.g., Rich v. New York Stock Exchange*, [1981] Fed.Sec.L.Rep. (CCH) ¶ 97, 856 at 90,291 (S.D.N.Y.1981) *citing Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364 (7th Cir.), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); *Butterman v. Walston & Co.*, 387 F.2d 822 (7th Cir. 1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968); *Steinberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, [1973–74 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94, 599 (S.D.N.Y.1974); *Marbury Management, Inc. v. Kohn*, 373 F.Supp. 140, 142–43 (S.D.N.Y.1974); *Kroese v. New York Stock Exchange*, 227 F.Supp. 519 (S.D.N.Y.1964); *Pettit v. American Stock Exchange*, 217 F.Supp. 21 (S.D.N.Y.1963). Despite the existence of authority in other jurisdictions for implying a cause of action under § 6, neither this circuit nor the Supreme Court has expressly ruled on the issue. Nevertheless, the presence of authority elsewhere would be persuasive were it not for the very recent trend of Supreme Court cases which have cast considerable doubt on the future viability of the evolutionary trend of implying a cause of action under § 6 which began with *Baird v. Franklin, supra*.[29]

The Supreme Court's enunciation of a standard or test to be employed in determining whether a private right of action should be implied under a federal statute began with *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court summarized that test as follows:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

---

**27.** The Court's decision on the motion for judgment on the pleadings as to counts three and five, *see* pp. 1058–1061 *infra*, renders it unnecessary to address and decide the statute of limitations issue raised by the motion for summary judgment on these counts.

**28.** Complaint, ¶ 56.

**29.** For example, defendants refer the Court to seventeen Supreme Court decisions dating from 1975 to the present, fourteen of which reversed expansive interpretations of the federal securities laws by the lower federal courts and three of which upheld restrictive interpretations by the lower courts. *See* Defendants' Memorandum at 12–14.

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). The Supreme Court has recently declared that the factors outlined in *Cort, supra,* are not of equal weight, but rather the central inquiry focuses upon the legislative intent. In particular, this Court is referring to *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). The Court is in agreement with the defendants that *Touche Ross* and *Transamerica* undermine the rationale of *Baird.*

*Touche Ross,* like the present case, involved the question of whether a "private remedy is implicit in a statute not expressly providing one." 442 U.S. at 562, 99 S.Ct. at 2482. The Court, focusing upon § 17(a) of the Exchange Act, stated that "the existence of a statutory cause of action is, of course, one of statutory construction." 442 U.S. at 568, 99 S.Ct. at 2485, *citing Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Thus, applying principles of statutory construction, the Court in *Touche Ross* began its analysis with the language of the statute itself and found that § 17(a) does not explicitly confer a private right of action in favor of anyone.[30] 442 U.S. at 568–569, 99 S.Ct. at 2485–2486. The Court then turned to the legislative history of the Exchange Act and finding that it too was silent on the issue, the Court refused to imply a remedy. The Court also rejected the argument that because Congress was silent on the issue, *i.e.,* did not express an intent to deny a cause of action under § 17(a), that the Court should therefore infer such a remedy from the Congressional silence, stating that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." 442 U.S. at 571, 99

S.Ct. at 2486. A recent commentator aptly summarized the *Touche Ross* opinion as follows:

Thus, *Redington* establishes that: (1) principles of statutory construction are to be used exclusively in determining the existence of a statutory right of action; (2) in construing a statute, a court must examine express statutory language, legislative history, and the general statutory scheme or framework to ascertain congressional intent; and (3) no private right of action may be implied without a showing of affirmative legislative intent. *Redington* reflects the Court's committed effort to brake the trend whereby private rights of action are judicially implied despite statutory silence.[31]

In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Court refused to imply a private right of action under § 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 *et seq.* Consistent with the analysis in *Touche Ross,* the Court in *Transamerica* examined the legislative intent with regard to § 206 finding that the section does not create or alter any civil liabilities. 444 U.S. at 19, 100 S.Ct. at 247. Noting other areas in the securities laws where Congress expressly granted a private cause of action, the court stated that "when Congress wishes to provide a private damages remedy, it knew how to do so and did so expressly." 444 U.S. at 21, 100 S.Ct. at 248, *quoting Touche Ross,* 442 U.S. at 572, 99 S.Ct. at 2487.

▬ The Court agrees with defendants that neither the language nor the legislative history of Exchange Act § 6 points to the conclusion that Congress intended to create a private cause of action under that section. The lack of explicit guidance from either the Third Circuit or the Supreme

---

**30.** In rejecting the proposition that the implication of a private right of action should be based on tort principles, rather than on a determination of whether Congress intended to create a private right of action, the Court in *Touche Ross* quoted *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979): "the fact that a federal statute has been violated and some person

harmed does not automatically give rise to a private cause of action in favor of that person." 442 U.S. at 568, 99 S.Ct. at 2485.

**31.** Dropkin, *National Securities Exchange Liability To Public Investors: Time To Overcome Inertia?,* 56 Notre Dame Law. 419, 423 (1981).

Court on this particular issue, coupled with the long line of precedent implying a cause of action under § 6, *see Rich v. New York Stock Exchange, supra,* causes the resolution of this question to be difficult. However, the guidance provided in *Touche Ross* and *Transamerica* points this Court to the conclusion that there is no implied private right of action under § 6 of the Exchange Act for the plaintiff-investors in this case.[32] This conclusion is consistent with three recent decisions by my colleagues on this Court. *Lenowitz v. Philadelphia Stock Exchange, Inc.,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 97, 801 (E.D.Pa.1980) (Luongo, J.) (no private right of action under § 6 in favor of an exchange member); *Hoover v. E.F. Hutton & Co., Inc.,* No. 79–3425 (E.D.Pa. June 24, 1980) (Cahn, J.) (no private right of action under § 6 for alleged violation of NYSE Rule 405); *Rankl v. Elkins, Stroud, Suplee & Co.,* No. 79–3187 (E.D.Pa. June 12, 1980) (Van Artsdalen, J.) (no private right of action under NYSE Rule 405). *See also, Birotte v. Merrill Lynch, Pierce, Fenner & Smith,* 468 F.Supp. 1172 (D.N.J.1979). Accordingly, defendants' motion for judgment on the pleadings will be granted on the § 6 claim contained in count one. Furthermore, the above analysis gleaned from the *Touche Ross* and *Transamerica* cases, which places a primary focus upon the legislative intent, compels the Court to reach the same conclusion with regard to plaintiff's claim under Exchange Act § 15 contained in count five. Neither the express language nor the legislative history of § 15 provides a basis for concluding that Congress intended to create a right of action for money damages. Indeed, the express provision of the relief contained in

§ 29(b) points to the opposite conclusion.[33] The Court agrees with defendants' assertion that *Transamerica, supra,* undercuts the rationale of *Franklin National Bank v. L.B. Meadows & Co.,* 318 F.Supp. 1339 (E.D. N.Y.1970), a case on which plaintiff places heavy reliance in arguing for an implied right of action under § 15. The Court views the analysis of *Transamerica,* pertaining to the implication of a damage remedy under § 206 of the Investment Advisers Act, persuasive and holds that there is no implied right of action for money damages under § 15. Defendants' motion will be granted on count five of the complaint.

■ With regard to count four and plaintiff's claim under § 7 of the Exchange Act, the Court considers the reasoning contained in *Stern v. Merrill Lynch, Pierce, Fenner & Smith,* 603 F.2d 1073 (4th Cir.1979) dispositive. Accepting the analysis contained in *Stern, supra,* compels the conclusion that plaintiff does not have an implied right of action under § 7. Accordingly, defendants' motion will be granted on count four of the complaint. *Accord Martin v. Howard, Weil, Labouisse, Fredericks,* 487 F.Supp. 503 (D.N.J.1979).

■ Count three alleges violations of Securities Act § 17(a) and Exchange Act § 10(b) and rule 10b–5 promulgated thereunder. Defendants have moved for judgment on the pleadings on this count arguing, *inter alia,* that there is no implied right of action under § 17(a) of the Securities Act. The Court considers it unnecessary to decide whether such a right of action exists under § 17(a)[34] because the Court finds persuasive defendants' alternative argu-

---

**32.** To the extent the Third Circuit has addressed the issue of implying a cause of action under federal laws which do not expressly grant one, that discussion serves to buttress somewhat the conclusion of this Court with regard to § 6. *See, e.g., Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139, 166 n. 8 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). *Cf. Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980).

**33.** *See* Defendants' Memorandum at 82–86.

**34.** Defendants do not argue, nor could they, that there is no implied right of action under § 10(b). Indeed, "every case which considered the question has held in accord with the *Fratt* case [*Fratt v. Robinson,* 203 F.2d 627 (9th Cir. 1953)] that a private right of action is available for a violation of the Rule . . . ." *R. Jennings & H. Marsh, Securities Regulation 856* (4th ed. 1977). *See Kardon v. National Gypsum Co.,* 69 F.Supp. 512 (E.D.Pa.1946); *see also Superintendent of the State of New York v. Bankers Life And Casualty Company,* 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971).

ment that the Exchanges owe no duty of disclosure to the plaintiff under § 17(a) and § 10(b).[35]

Plaintiff concedes that any liability on the part of the defendants under these sections must be based on their alleged omissions and nondisclosures.[36] Even if no duty to disclose is found to exist under these circumstances, plaintiff contends that the defendants may be secondarily liable as aiders and abettors. The Court does not agree. In *SEC v. Coffey,* 493 F.2d 1304 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975), the Sixth Circuit set forth a useful formulation of aiding and abetting:

> Without meaning to set forth an inflexible definition of aiding and abetting, we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation.

493 F.2d at 1316 (footnote omitted).

*Cf. Monsen v. Consol. Dressed Beef Co., Inc.,* 579 F.2d 793 (3d Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Gould v. American-Hawaiian S.S. Co.,* 535 F.2d 761 (3d Cir.1976); *Landy v. Federal Deposit Ins. Corp.,* 486 F.2d 139 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). The third prong of the formulation set forth in *Coffey, supra* is that "the accused aider-abettor knowingly and substantially assisted the violation." Given that the alleged liability of the Exchanges here would be based upon silence and inaction, this Court would find it difficult to equate inaction and silence with knowing and substantial assistance. The Third Circuit stated in *Monsen, supra:*

> Equally important as knowledge in establishing an aider-abettor's liability, is proof of his substantial assistance or participa-

tion in the primary securities violation. The securities laws comprehend that mere knowledge of a violation alone, without assistance or a duty to disclose the violation, is not an actionable wrong. Nor have courts extended vicarious liability where the secondary defendant's conduct is nothing more than inaction. Such inaction, however, may provide a predicate for liability where the plaintiff demonstrates that the aider-abettor *consciously* intended to assist in the perpetration of a wrongful act.

579 F.2d at 800 (citations omitted) (emphasis by the *Monsen* Court). However, despite the problem of equating silence and inaction with "substantial assistance," the complaint does allege that the defendants "intentionally, willfully and knowingly, with scienter, withheld from Plaintiff and others similarly situated" the facts comprising the violations alleged in count three.[37] Arguably this allegation may be enough to defeat the defendants' motion for judgment on the pleadings. However, the Supreme Court has instructed in the context of imposing liability under rule 10b–5 on an aider and abettor that "[b]efore liability, civil or criminal, may be imposed for a rule 10b–5 violation, it is necessary to identify the duty that the defendant has breached." *Chiarella v. United States,* 445 U.S. 222, 237, 100 S.Ct. 1108, 1119, 63 L.Ed.2d 348 (1980) (Stevens, J., concurring). Since the Court rejects the narrow duty of disclosure urged upon it by the plaintiff[38] and concluding that mere inaction or silence does not amount to "substantial assistance" in the alleged violations, the Court will grant defendants' motion for judgment on the pleadings as to the § 17(a) and § 10(b) claims contained in count three.

Finally, defendants have moved for judgment on the pleadings dismissing the common law claims for fraud and breach of contract contained in counts one, three and six of the complaint. The Court does not agree with defendants' contention that the

---

**35.** *See* Defendants' Memorandum at 69–74.

**36.** *See* Plaintiff's Memorandum at 100.

**37.** Complaint, ¶ 76.

**38.** *See* Plaintiff's Memorandum at 96–98.

failure of the § 6 and §§ 17(a) and 10(b) claims should necessarily result in a dismissal of the common law breach of contract and fraud claims. Since defendants' motion pertaining to plaintiff's Exchange Act § 9(a) claim will be denied, a substantial federal question remains in this case which warrants retention of the common law claims pursuant to the Court's pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

An appropriate Order follows.

## ON MOTIONS TO AMEND AND TO DISMISS

This is a class action brought by Lynn G. Walck on behalf of himself and persons who purchased stock of the Trans-Lux Corporation through the facilities of the brokerage firm of Edwards and Hanly during the period of January 1, 1969 through January 16, 1974.[1] The defendants are the American Stock Exchange and the New York Stock Exchange.

Presently before the Court are two motions. First, plaintiff has filed a *Motion To Amend Interlocutory Memorandum and Order,*[2] which seeks certification for immediate appeal of certain questions raised by this Court's dismissal on May 15, 1981 of the claims contained in Counts I, III, IV and V of plaintiff's Complaint.[3] Second, shortly after plaintiff's motion, there was filed *Defendants' Motion For Judgment On The Pleadings Dismissing The Complaint.*[4] In this motion, defendants seek dismissal of Count II of plaintiff's Complaint on grounds that the allegations in Count II do not state a claim under Section 9(e) of the 1934 Exchange Act.[5] Further, defendants' motion seeks dismissal of the pendent common law claims contained in the First, Third and Sixth Counts of the Complaint.

The factual background of this case is well documented and adequately set forth in the memorandum opinion accompanying the Order of this Court dated May 15, 1981.[6]

1. Class action certification was granted enabling plaintiff to sue on behalf of himself and on behalf of

 all customers who maintained accounts with the brokerage firm of Edwards and Hanly and who purchased, caused the purchase of or were caused to purchase the common stock of the Trans-Lux Corporation through the facilities of Edwards and Hanly during the period of January 1, 1969 through and including January 16, 1974.

 *See,* C.A. No. 77–140 (E.D.Pa., Oct. 6, 1977) (Order by Hannum, J., granting class action certification).

2. Docket Entry No. 129.

3. *See,* C.A. No. 77–144 (E.D.Pa., May 15, 1981) (Memorandum and Order by Hannum, J., granting in part and denying in part *Defendants' Motion For Judgment On The Pleadings And For Summary Judgment*).

4. Docket Entry No. 131.

5. 15 U.S.C. § 78i(e).

6. C.A. No. 77–144 (E.D.Pa., May 15, 1981). *See* note 3 *supra.*

 In 1953 the named plaintiff, Lynn G. Walck, established a stock brokerage account with a New York brokerage firm—"Edwards and Hanly." During the relevant time period Edwards and Hanly was registered with the Securities Exchange Commission as a broker-dealer under the Exchange Act and was also a member firm of AMEX and NYSE. In 1959, Walck opened a margin account with Edwards and Hanly. Prior to that time, from 1953 until 1959, Walck's account with Edwards and Hanly had consisted solely of cash. The margin account was established at the prompting of Edward J. Kelly, who was a representative of Edwards and Hanly.

 Between 1959 and 1973, Walck made deposits into his margin account with Edwards and Hanly totalling approximately $100,000.00. Between 1969 and 1973, again at the recommendations and urging of Edwards and Hanly, plaintiff liquidated all his security holdings in order to purchase on margin 32,300 shares of Trans-Lux corporation common stock at prices ranging between $44.50 and $8.00 per share at a total cost of approximately $384,000.00. At no time, during this relevant period, did Kelly or Edwards and Hanly ever explain to the plaintiff what a margin account was or how it worked.

 The price of the Trans-Lux stock from 1969 to 1973 fluctuated, however the general trend was downward. Due to this downward trend, plaintiff's account became undermargined and on May 21, 1973, Edwards and Hanly sent to the plaintiff a telegram informing him that his account was undermargined in the amount of $43,000.00 and that if plaintiff did not immedi-

For the purpose of the present motions, it is sufficient to note that the plaintiff has sued the American and New York Stock Exchanges, alleging that these exchanges were wilful participants in, or aided and abetted various violations of the securities laws by the Edwards and Hanly brokerage firm.

In the Memorandum and Order of May 15, 1981, Counts I, IV and V of plaintiff's Complaint were dismissed because the Court refused to recognize a private right of action under Sections 6, 7, and 15 of the 1934 Exchange Act, respectively.[7] Also dismissed on May 15, 1981 were claims in Count III which were predicated on alleged violations by defendants of the Securities Act § 17(a) and Exchange Act § 10(b) and Rule 10b–5 promulgated thereunder. Given that the alleged liability of the exchanges for these violations would be based on their "silence and inaction," this Court held that such inaction and silence could not, under the circumstances, be equated with the "knowing and substantial assistance" required to establish 10b–5 liability on a theory of aiding and abetting. *See,* *S.E.C. v. Coffey,* 493 F.2d 1304, 1316 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975).

The Court will first address Defendants' Motion For Judgment On The Pleadings Dismissing The Complaint inasmuch as determination of the issues therein are dispositive of both pending motions.

### Defendants' Motion For Judgment On The Pleadings Dismissing The Complaint

Defendants earlier moved this Court for summary judgment on the Exchange Act § 9(e) claim, alleged in Count II, on grounds that the claim was time-barred. At that time, summary judgment was denied as to Count II, as there remained material issues of fact regarding when the alleged violations were discoverable, and hence there was a factual issue as to when the limitations period began to run.[8] In the instant motion, defendants contend that the § 9(e) claim should be dismissed on the same ground that the § 17(a) and 10b–5 claims were dismissed, that is, mere inaction or silence does not constitute "wilfull participation" or aiding and abetting so as to establish liability under § 9(e). Defendants further argue that since Rule 10b–5 is the broadest anti-fraud provision in the fed-

---

ately deposit that amount into the account, Edwards and Hanly would liquidate some of his securities to cover the deficiency. The plaintiff informed Edwards and Hanly that he did not have additional funds to deposit. Additional notices were sent to the plaintiff in June, August and September of 1973 that his account was undermargined. Finally in January of 1974, Edwards and Hanly liquidated the plaintiff's account, selling the Trans-Lux stock at $2.00 per share in an attempt to meet the plaintiff's margin deficiency. After sale of the stock the deficiency in the plaintiff's account remained at approximately $108,000.00.

As a result of the foregoing, Walck sued Edwards and Hanly (and Kelly) in this Court— *Walck v. Edwards and Hanly and Edward Kelly,* Civil Action No. 74–664. The plaintiff alleged in that action that the defendants, in handling his account, had violated § 17(a) of the Securities Act and §§ 7, 10 and 15 of the Exchange Act, and the rules promulgated thereunder. The plaintiff also alleged a common law tort and breach of contract. The relief sought was $100,000.00 compensatory and $500,000.00 punitive damages, as well as a declaration that the plaintiff did not owe Edwards and Hanly the $108,000.00 deficiency.

On September 13, 1976, Edwards and Hanly filed a Chapter XI petition in bankruptcy. On September 15, 1976, the plaintiff's action against Edwards and Hanly was stayed indefinitely by the bankruptcy court. The present action against the two exchanges was instituted on January 13, 1977. A recitation of the circumstances leading up to the Edwards and Hanly action was prompted due to the similarity of operative facts between that case and the present one. The plaintiffs' claim against the defendant-Exchanges arises from the same circumstances. Basically, the present plaintiffs are alleging that the Exchanges "aided and abetted" Edwards and Hanly's alleged wrongdoing.
*Id.* at 2–5.

**7.** 15 U.S.C. §§ 78f, 78g and 78o. *See also* *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (cases restricting the implication of private rights of action).

**8.** *See* Memorandum and Order, slip opinion at 7, Civil Action No. 77–140 (E.D.Pa., May 15, 1981).

eral securities laws, the now—dismissed 10b–5 claim must have encompassed plaintiff's Exchange Act § 9(e) claim. Accordingly, defendants urge that the § 9(e) claim should, *a fortiori,* be dismissed. For reasons that will follow, defendants' motion will be granted.

Section 9(a)(2) of the Exchange Act, upon which plaintiff bases Count II, provides:

(a) It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—

(2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

15 U.S.C. § 78i(a)(2). Section 9(e) of the Act provides an express remedy to persons injured by conduct constituting a violation of § 9(a)(2):

(e) Any person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction.

15 U.S.C. § 78i(e). It is difficult to imagine any violation of § 9(a)(2), however, that would not also fall within the broad scope of proscribed activity set forth in Rule 10b–5:

It shall be unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ *any* device, scheme, or artifice to defraud,

(b) To make *any* untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in *any* act, practice, or course of business which operates or would operate as a fraud of deceit upon any person, in connection with the purchase or sale of any security. (emphasis supplied)

17 C.F.R. 240.10b–5 (1980).

Moreover, § 10(b) and Rule 10b–5 "have become, by careful judicial construction, the primary mechanisms by which open market investors can seek redress against those who manipulate the market by fraudulent activity." *Ross v. A.H. Robbins,* 607 F.2d 545, 556 (2nd Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Further, it is evident that in enacting § 10(b), "Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices." *Santa Fe Industries v. Green,* 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1976). It is not surprising, therefore, that courts have recognized that the scope of manipulative activity proscribed by § 9(a)(2) is encompassed by the scope of activities proscribed by § 17(a) and § 10(b). For instance,

It is well settled that the manipulative activities expressly prohibited by § 9(a)(2) of the Exchange Act with respect to a listed security are also violations of § 17(a) of the Securities Act and § 10(b) of the Exchange Act when the same activities are conducted with respect to an over-the-counter security.

*SEC v. Resch-Cassin & Co.,* 362 F.Supp. 964, 975 (S.D.N.Y.1973).

In plaintiff's view, to assume such a degree of over-lap renders the remedial provisions of §§ 9(a)(2) and 9(e) redundant with the remedy available under § 10(b) and Rule 10b–5. There remain, however, sever-

al procedural differences between these remedies:

> The section 9(e) remedy differs in several respects from the implied remedy under Rule 10b–5. Section 9(e) contains a relatively short statute of limitations, permits the court to require security for costs, limits damages to losses sustained by reason of the unlawful price manipulation, provides for contribution by persons not joined as defendants in the original action, and permits the court to assess attorneys' fees against either party.

*Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 180 (E.D.Pa.1979). Notwithstanding these procedural differences, since plaintiff's § 9(e) claim is substantively encompassed by the now-dismissed 10b–5 claim, dismissal of the § 9(e) claim is warranted.

Having found defendants' arguments persuasive concerning the overlap between the § 9(e) cause of action and the 10b–5 cause of action, some discussion of the merits of plaintiff's § 9(e) claim is nonetheless in order. In this regard, plaintiff's complaint does not allege that the exchanges actually effected manipulative transactions as principals. Rather, it is contended that the defendants "substantially assisted" the Edwards and Hanly firm by failing to stop certain § 9(a)(2) violations committed by these brokers, of which the exchanges were aware.[9]

■ To establish liability for securities fraud on a theory of aiding and abetting,

> Three elements are thus required . . .
>
> (1) that an independent wrong exists; (2) that the aider or abettor know of the wrong's existence; and (3) that substantial assistance be given in effecting that wrong.

*Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139, 163 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).[10] In the present case, it is sufficiently averred that an independent wrong existed, and that the defendants knew of the wrong's existence. The dispositive issue, therefore, is whether the defendants gave "substantial assistance" in effecting the wrong.

■ In *Landy, supra,* the Court borrowed from common law tort concepts to explain what is meant by "substantial assistance":

> The Restatement [of Torts § 876, Comment b] suggests that in determining if the assistance is substantial enough to make an individual liable for the acts of another, the relevant factors are: (1) the amount of assistance given by the defendant (2) his presence or absence at the time of the tort; (3) his relation to the other person; and (4) his state of mind.

*Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139, 163 (3d Cir.1973), *cert. denied* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). As respects the first factor, the amount of assistance rendered, plaintiff's theory of liability is that the failure of the exchanges to enforce their own rules substantially assisted the Edwards and Hanly firm to commit a violation of § 9(a)(2)— which in turn caused injury to plaintiff. Thus, any "assistance" rendered by defendants was indirect, and in the form of an omission rather than positive acts. However, as was related in this Court's prior opinion, "[t]he securities laws comprehend that mere knowledge of a violation alone, without assistance or a duty to disclose the violation, is not an actionable wrong." *See Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 800 (3d Cir.1978), *cert. denied*

---

**9.** It is further averred that the defendants actively concealed the illegal activities of Edwards and Hanly. *See* paragraph 73 of Complaint. Docket Entry No. 1.

**10.** The Third Circuit's formulation of the elements of aiding and abetting in *Landy* is virtually identical to the formulation in *SEC v. Coffey,* except that the Third Circuit requires "an independent wrong" rather than that "some other party has committed a securities law vio-

lation." *See SEC v. Coffey,* 493 F.2d 1304, 1316 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975).

To the extent that plaintiff alleges a primary violation of § 9(e), rather than liability for aiding and abetting, no further discussion of the merits is necessary since the Court is persuaded that such claims are encompassed by the now—dismissed 10b–5 claims.

439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

Plaintiff, however, urges that even absent a duty to disclose, there exists a "federally mandated duty of self-policing by exchanges." *See, Silver v. New York Stock Exchange,* 373 U.S. 341, 352, 83 S.Ct. 1246, 1254, 10 L.Ed.2d 389 (1963). Accordingly, plaintiff contends that the breach of this duty constituted substantial assistance to the principal violators. Granting that the exchanges had a duty to investigate the activities of the brokerage firm in this case, however, this same argument would have applied equally against the dismissal of the now—dismissed 10b–5 claim. Moreover, plaintiff seems to admit that the defendants' "duty" in this regard is the equivalent of the exchanges' duty under § 6 of the Exchange Act, for which there is no private right of action.[11] To summarize, in the present circumstances, this Court is disinclined to find the alleged breach of the Exchange Act § 6 duty to be a basis for imposing liability for aiding and abetting violations of either § 9(e) or Rule 10b–5. Thus, the silence and inaction of defendants in this case is not deemed a sufficient amount of assistance to the violation.[12]

The second and third of the above factors relevant to finding substantial assistance refer to the presence of the alleged aider and abettor at the time of the wrong and the relationship to the principal wrongdoer. In this regard, the Court acknowledges that the principal wrongdoers held seats on the defendant exchanges, and that the exchanges provided the medium through which the manipulative transactions were effected. Although these circumstances would tend to support a finding of substantial assistance, they are not deemed dispositive in the present case.

The fourth and final factor relevant to the substantiality of assistance is the state of mind of the alleged aider and abettor. The Court in *Landy, supra,* explained the state of mind requirement for aiding and abetting securities fraud by reference to the criminal law:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."

*Landy, supra,* at 163, *quoting Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). This principle "harmonizes with the criterion of 'state of mind' set forth in the restatement for civil liability." *Landy, supra* at 164. In the present case, there is no allegation that the exchanges proposed to bring about the manipulative transactions and the consequent fraud upon the stock purchasers.

An additional circumstance, closely related to the state of mind consideration, is the lack of any allegation of benefit to the exchanges from the fraud of the Edwards and Hanley firm.

> Sections 9(a)(2) and 9(e) contain requirements of both manipulative motive and willfulness. The section does not condemn extensive buying or buying which raises the price of a security itself. *Nor are the requirements of manipulative purpose and willfulness to be interpreted apart from the statute's design to prevent those with a financial interest in a security from manipulating the market therein.*

*Crane v. Westinghouse Air Brake Co.,* 419 F.2d 787, 794 (2nd Cir.1969) *cert. denied,* 400

---

**11.** *See* plaintiff's *Memorandum In Opposition To Defendants' Motion For Judgment On The Pleadings,* Docket Entry No. 133 at 12 n. 12.

**12.** The Court acknowledges that in some circumstances, "inaction" may constitute substantial assistance for finding securities law violations on a theory of aiding and abetting. *SEC v. National Student Marketing,* 457 F.Supp. 682 (D.D.C.1978). However, in *National Student Marketing,* it is clear that the attorneys who aided and abetted the securities fraud were far more intimately involved with the transaction giving rise to liability than were the defendants in the present case, and the attorneys had breached a clear duty to speak up in the face of the fraud. This Court's earlier Memorandum and Order rejected such a duty to disclose in its dismissal of plaintiff's 10b–5 claim.

**1066**

U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970) (emphasis supplied). In whatever sense the defendants participated in the brokers' violations, they do not appear to have been participants with a financial interest in the manipulative transactions, nor is any benefit to the defendants from this fraud evident. This consideration is particularly noteworthy when, as in the present case, the defendants are charged with aiding and abetting the securities law violation, rather than with commission of the principal offense. Moreover, the Court is persuaded "that benefit (or a higher level of knowledge) should be essential when the allegation is aiding and abetting by silence and inaction ... rather than by affirmative conduct. Otherwise, there is no way to distinguish mere bystanders from violators." 3 A. Bromberg & L. Lowenfels, Securities Fraud & Commodities Fraud, § 8.5 (584) at 208.48 (1981).

Having concluded that plaintiff's § 9(e) claim should be dismissed, there remain no federally based claims in this lawsuit. Accordingly, plaintiff's remaining common law claims should be dismissed under the well settled principle set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966):

> "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

*Motion To Amend Interlocutory Memorandum and Order*

Having granted *Defendants' Motion For Judgment On The Pleadings Dismissing The Complaint,* this will constitute a final, appealable order. Plaintiff's *Motion To Amend Interlocutory Memorandum And Order* is therefore moot.