Jeffrey D. **NEWFIELD**

v.

**SHEARSON LEHMAN BROS., et al.**

Civ. A. No. 88–6467.

United States District Court, E.D. Pennsylvania.

Nov. 23, 1988.

F. Emmett Fitzpatrick, III, Philadelphia, Pa., for plaintiff.

Ellen Rosen Rogoff, Bolger Picker & Weiner, Philadelphia, Pa., for Shearson Lehman Bros., Inc., et al.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

Plaintiff, Jeffrey Newfield, seeks to recover from defendant Shearson Lehman Brothers (now Shearson Lehman Hutton) and two of its employees, Bruce O'Brien and Michael Neft, for alleged violations of § 10 and § 15 of the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act (RICO), and § 4b of the Commodity Exchange Act. In addition, plaintiff's Complaint includes a number of state law claims, and jurisdiction is predicated on both the presence of federal questions and diversity of citizenship. Defendants have moved for dismissal of plaintiff's federal claims under Federal Rule of Civil Procedure 12(b)(6), and to compel arbitration of plaintiff's state law claims.

In his Complaint, plaintiff relates the following story. A citizen of Canada, he was employed in 1985 as a broadcaster by Infinity Broadcasting, owner of the Philadelphia radio station WYSP. In the late spring of 1986, Newfield contacted Shearson's Bala Cynwyd office about buying stock in Infinity Broadcasting. Infinity was about to make a public offering, with Shearson as its broker. Newfield discussed this purchase with O'Brien, a Shearson sales representative, who told Newfield that he would have to open an account with Shearson and requested that the two meet over lunch.

At this meeting, O'Brien asked Newfield whether he had any experience with the stock market. Newfield responded that he had none, and that with mortgage payments and a family to support, he needed safe investments with a stable return on his money. Newfield said that he could invest a few thousand dollars per month, but that he would need a 40% rate of return. O'Brien told Newfield that he could earn at least 40% by investing with Shearson, starting with a purchase of the stock of AW Computer, a company about which O'Brien professed to have inside information. O'Brien ascertained that Newfield had only an eighth grade education. O'Brien then gave Newfield a form, which O'Brien told him he must sign in order to open an account with Shearson. Newfield signed the form without reading it.

In the course of their dealings during the summer of 1986, Newfield was encouraged to purchase stock on the basis of purported

inside information, to entrust O'Brien with his finances, and indeed, to deposit his paychecks in his Shearson account. O'Brien represented that Newfield's investments were performing well, and told Newfield that he should not be worried about the large number of trades being made. At about this time, Newfield was introduced to Michael Neft, a Shearson vice president and Resident Manager of the Bala Cynwyd office.

In November 1986 Newfield was notified by his bank that checks from his Shearson account had been rejected for insufficient funds. O'Brien reassured him, saying that the bounced checks were the result of an accounting error. Also in November, O'Brien convinced Newfield that the latter could "make a lot of money" by trading options. O'Brien did not discuss with Newfield the risks inherent in options trading, and in fact had been trading options in Newfield's account prior to receiving this authorization.

On November 13, 1986, Newfield's employment with Infinity was terminated. Newfield informed O'Brien that he was unemployed and could not afford to lose money. O'Brien nevertheless continued to trade in Newfield's account. By the end of November, O'Brien induced Newfield to make several sizeable deposits to his Shearson account, in order to avoid losing his investment and to ensure a large profit. Again Newfield's account checks began to bounce, and again he was assured (by both O'Brien and Neft) that a bookkeeping error was to blame.

In January 1987, O'Brien told Newfield that he was "broke." Around this time, Neft wrote a letter to Newfield, calling Newfield's account "one of the most active," and requested that Newfield sign a prepared statement stating that he was aware of the high level of activity in his account and that he was a knowledgeable investor. Newfield did not sign this form.

Defendants assert first that Newfield's claim under § 10 of the Securities Exchange Act of 1934 and Rule 10b–5 is time barred as a result of the Third Circuit's in banc decision in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1550 (3d Cir.1988), which held that the limitations period was one year from the time plaintiff discovers the facts constituting the alleged violation. In Pennsylvania, prior to that case, the limitations period for private actions under § 10 and Rule 10b–5 for "churning" was that provided by the state statute of limitations for fraud actions, *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605, 610 (3d Cir. 1980), or, after February 1983, two years, *A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330, 334 (3d Cir.1986).

Newfield was told that he was "broke" on January 16, 1987. He filed this action approximately one and one half years thereafter, and over four months before the Third Circuit's decision in *Data Access*. Because the Court of Appeals explicitly refused to decide whether *Data Access* should be applied retroactively, 843 F.2d at 1550–51, and because plaintiff filed suit well within the only limitations period of which he had cause to know at the time, I hold that the retrospective application of *Data Access* to his claim would be unfair, and that his action was timely brought.

Defendants argue next that Newfield has failed to state a claim under § 15 of the Securities Exchange Act of 1934, because courts in this Circuit have not recognized a private cause of action thereunder, *see, e.g., Walck v. American Stock Exchange, Inc.*, 565 F.Supp. 1051, 1059 (E.D.Pa.1981), *aff'd on other grounds*, 687 F.2d 778 (3d Cir. 1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983), a point which plaintiff concedes. Plaintiff can, however, recover for the alleged violations of the securities laws under Rule 10b–5. Newfield's § 15 claim will therefore be dismissed.

Third, defendants assert that plaintiff has failed to state a RICO claim because, among other things, Newfield has not adequately pleaded RICO enterprise. Although it is not clear from the Complaint, plaintiff argues in his response to defendants' motion that the enterprise consists of defendants Shearson, O'Brien and

Neft, acting in concert. In this Circuit, however, the RICO enterprise must be separate from the defendant. *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir.1984). Since Shearson is a corporation, which cannot act but through its agents, plaintiff has in effect pleaded the existence of an association-in-fact of a corporation with its agents, O'Brien and Naft. This will not satisfy the nonidentity requirement. *Tarasi v. Dravo Corp.*, 613 F.Supp. 1235, 1237 (W.D.Pa.1985). As this Court has stated before, "[t]o accept plaintiff's argument would be to read the enterprise requirement out of the statute entirely, whenever a corporate defendant is involved." *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 109 (E.D. Pa.1986). Plaintiff's RICO claim must be dismissed.

■ Defendants' fourth attack on the Complaint is their assertion that plaintiff has failed to state a claim under § 4b of the Commodity Exchange Act. Apparently Newfield is unsure whether commodities were traded in his account. Defendants state that none of the trades involved commodities, and they offer the confirmation slips for the account to prove it. If I were to consider this evidence, I would be required to treat defendants' motion as one for summary judgment, and it would be unfair to do so before plaintiff has had the opportunity to conduct discovery. However, as I agree with defendants that plaintiff's Commodity Exchange Act claim is unduly vague and couched in hypothetical language, it will be dismissed. Plaintiff may seek leave to amend the complaint if discovery shows that he has a basis for such a claim.

Newfield's remaining claims arise under state law. Defendants move to compel arbitration of these (as well as of any federal claim I do not dismiss) on the basis of an arbitration agreement allegedly contained in Newfield's contract with Shearson. Newfield asserts that he was "rushed" into signing a form that he did not have an opportunity to read, that he was told he was "required" to do so to open an account, and that O'Brien induced him to sign without reading the form so that he could

begin "making money." Newfield admits that to this day he does not know what he signed.

■ An arbitration agreement is valid and enforceable absent grounds for revocation of the contract. 9 U.S.C.A. § 2 (1970). Here, plaintiff Newfield alleges that that he did not intend to agree to arbitration, but was fraudulently induced to sign a form which defendants claim contains an arbitration clause. The very existence of an agreement to arbitrate is in issue, and the matter must be resolved before plaintiff's claims can be referred to an arbitrator. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980).

An Order follows.

## ORDER

AND NOW, this 22nd day of November, 1988, it is ORDERED:

1. Defendants' Motion to Dismiss is GRANTED to the extent that Plaintiff's claims under § 15 of the Securities Exchange Act of 1934 (Count II), RICO (Count III), and § 4b of the Commodity Exchange Act (Count VIII) are DISMISSED. If discovery subsequently reveals any basis for a claim under the Commodity Exchange Act, Plaintiff will be granted leave to amend his Complaint and assert such a claim within 45 days.

2. In all other respects, Defendants' Motion is DENIED.