Jerome H. ELLIS

v.

MERRILL LYNCH & CO. and
W.A. Schreyer.

Jay S. FRIEDENBERG and Marla B. Friedenberg, JT, on behalf of themselves and all others similarly situated

v.

MERRILL LYNCH & CO. and
W.A. Schreyer.

Civ. A. Nos. 86–2865, 86–3373.

United States District Court,
E.D. Pennsylvania.

July 15, 1987.

Eugene A. Spector and Robin M. Roseman, Philadelphia, Pa., for plaintiffs.

Paula D. Shaffner and David C. Franceski, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

The plaintiff, Jerome H. Ellis, in Civil Action No. 86–2865, and the plaintiffs, Jay S. Friedenberg and Marla B. Friedenberg, JT, in Civil Action No. 86–3373, on behalf of themselves and all others similarly situated, bring these actions against the defendants, Merrill Lynch & Co. and its chief executive officer, W.A. Schreyer. In their complaints, the plaintiffs at Count I, allege violations by defendants of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder. Moreover, the plaintiffs in their complaint further allege at Count II that the defendants violated Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Counts III, IV and V allege fraud, breach of fiduciary duty and breach of contract under Pennsylvania law.

The defendants now move to dismiss the plaintiffs' complaints for failure to state a claim upon which relief could be granted. Federal Rule of Civil Procedure 12(b)(6).[1] Accordingly, the Court in passing on this motion to dismiss accepts the allegations contained in the plaintiffs' complaints as true. Thus, the questions before the Court are matters of law.

In this action, the plaintiffs allege that it was the practice of Merrill Lynch & Company and its chief executive officer W.A. Schreyer: (a) to disburse the proceeds from securities sales to the plaintiffs and the plaintiff-class, by using checks drawn on concentration accounts geographically remote either from the location of the branch which maintained the plaintiff-customer's account or from the plaintiff-customer's residence;[2] and (b) to delay the crediting of customer dividends or the cash payments thereof until the end of the month or the end of the regular monthly cycle applicable to an individual customer account.

These practices, the plaintiffs allege, allowed defendants to use unjustifiably their money interest-free for identifiable time intervals.

### I. Securities Fraud Claims

■ Defendants assert that these two practices are not "in connection with the purchase and sale" of securities and thus, not in contravention of the anti-fraud provisions of the Exchange Act—that is, § 10(b) of the Exchange Act and Securities and Exchange Commission Rule 10b–5.

This Court, however, believes that plaintiffs' allegations concerning defendants' method of disbursing proceeds from sales of their customers' securities state a cause of action under the securities laws. In this case, the defendants, by disbursing sale proceeds to their plaintiff-customers by checks drawn on geographically remote banks, in essence misappropriated their clients' funds for identifiable periods of time. Practices of this kind were condemned by the United States Supreme Court in *Superintendent of Insurance of the State of New York v. Bankers Life and Casualty Company*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The *Bankers Life* decision provides direct support for the position advanced by the plaintiffs.

More support for this conclusion can be gathered from the Securities and Exchange Commission's view on the specific practice at issue before this Court. Expressing its displeasure with this practice, the SEC commented that:

The selection of a distant bank for the purpose of prolonging a broker-dealer's use of customer funds unfairly deprives

---

1. Defendants also move to dismiss plaintiffs' complaints on the basis that plaintiffs' security fraud and RICO claims fail to satisfy the pleading requirements of Fed.R.Civ.P. 9(b). Although the plaintiffs' complaints are not model pleadings, they do satisfy the minimum requirements of Fed.R.Civ.P. 9(b). Accordingly, the Court rejects defendants' motion to dismiss on this basis.

2. The plaintiffs allege that defendants also paid to plaintiffs and the class plaintiffs purport to represent, dividends received from issuers, by checks drawn on geographically remote banks. Because, as is explained later in the text, this Court holds that the disbursement of dividends by defendants is not "in connection with" the purchase or sale of a security, this aspect of the plaintiffs' complaints will be dismissed.

customers of their immediate use of funds, is inconsistent with a broker-dealer's obligation to deal fairly with its customers and is inconsistent with just and equitable principles of trade. Such a purpose may be inferred from the circumstances surrounding the selection of a distant bank and is particularly evident in cases where a broker-dealer arranges its use of two or more disbursing banks with a view to paying customers in a particular region from a bank in a distant location.

Securities and Exchange Act Release No. 15194 (September 28, 1978) (footnotes omitted).[3]

This Court also finds that the defendants' failure to disclose to plaintiffs the source of customer checks constitutes fraud. Broker-dealers, such as defendants, stand as fiduciaries to their clients. It is from this relationship that a duty to disclose the source of customer checks arises. Plaintiffs' allegations not only suffice to show that such a trust relationship existed but also demonstrate that defendants breached the fiduciary duty they owed to the plaintiffs.

Moreover, this information is material to potential investors especially when one considers that the defendants have, according to the plaintiffs' allegations, an unannounced policy of honoring individual customer requests that sale proceeds be disbursed to them by checks drawn on local banks. This alleged misappropriation and fraud form the basis upon which this Court will deny in part defendants' motion to dismiss.

■ However, the alleged practices of defendants relating to the posting or payment of dividends are not "in connection with the purchase or sale of a security" as required by § 10(b) of the Exchange Act. Nor do these practices lend themselves by analogy to the conduct proscribed by the United States Supreme Court in *Bankers Life*, 440 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

While this particular issue has not been expressly decided by the United States Court of Appeals for the Third Circuit, *see Pittsburgh Terminal Corp. v. Baltimore & O.R. Co.*, 680 F.2d 933, 939–40 (3d Cir. 1982), the plain language of § 10(b) and persuasive authority dictate that the above conclusion is a proper one. *See Sacks v. Reynolds Securities, Inc.*, 593 F.2d 1234, 1240–41 (D.C.Cir.1978); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1346 n. 14 (2d Cir.1974). *Cf. id.* at 1341–46. *See also* Jacobs, *Litigation and Practice Under Rule 10b-5* § 38.02[b] and n. 21 ("[n]o one would suggest that a small cash dividend is a sale"). Accordingly, this aspect of plaintiffs' complaints will be dismissed.

## II. *RICO Claim*

■ This Court will also dismiss Count II of the plaintiff's complaint in Civil Action No. 86–2865, and the plaintiffs' complaint in Civil Action No. 86–3373 on the basis that the plaintiffs have failed to state a claim upon which relief could be granted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* Specifically, the plaintiffs have failed to plead a RICO enterprise separate from and independent of the defendant. This failure is a fatal one.

The United States Court of Appeals for the Third Circuit has determined that the "person" charged with the RICO violation cannot be the same entity as the "enterprise" under 18 U.S.C. § 1962(c). *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628 (3d Cir.1984). *See Temple University of the Commonwealth System of Higher Education v. Salla Brothers, Inc.*, 656 F.Supp. 97, 102–104 (E.D.Pa.1986) (Hannum, J.); *Gilbert v. Prudential-Bache Securities, Inc.*, 643 F.Supp. 107, 109 (E.D. Pa.1986) (Fullam, J.); *Wright v. Everett Cash Mut. Ins. Co.*, 637 F.Supp. 155, 156 (W.D.Pa.1986); *Tarasi v. Dravo Corp.*, 613 F.Supp. 1235, 1236 (W.D.Pa.1985). Specifically, the Court of Appeals stated that a RICO enterprise must be "independent of

---

**3.** The inference that defendants utilize two or more disbursing banks to carry on this scheme can legitimately be drawn from the allegations contained in the plaintiffs' complaints.

982

or separate from the defendant." *B.F. Hirsch*, 751 F.2d at 633.

Under *Hirsch* and its progeny, the defendant Merrill Lynch and its employee, defendant Schreyer, cannot constitute both the RICO "person" and the RICO "enterprise," since these must be distinct entities. Effectively, plaintiff has merely alleged an enterprise which is the same as and part of the defendant corporation.

Moreover, a corporation can only operate through its officers and agent. Thus, for the purpose of ascertaining § 1962(c) liability, W.A. Schreyer is the same entity as and should be treated in the same manner as the defendant, Merrill Lynch & Co. *Cf. Tarasi v. Dravo Corp.*, 613 F.Supp. 1235, 1237 (W.D.Pa.1985).

Finally, the Court notes that plaintiffs in each action fail to state a claim under 18 U.S.C. § 1962(a). Accordingly, the RICO counts in both complaints will be dismissed without prejudice.

### III. *Other Contentions*

The Court has reviewed the other contentions made by the defendants and finds them to be without merit.

An appropriate Order follows.

### ORDER

**I. Civil Action 86–2865**

AND NOW, this 15th day of July, 1987, upon consideration of motion of defendants, Merrill Lynch & Co. and W.A. Schreyer, to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Docket Entry No. 7), plaintiffs' memorandum in opposition to defendants' motion to dismiss plaintiffs' complaints (Docket Entry No. 10), defendants' reply brief in further support of defendants' motion to dismiss (Docket Entry No. 12), original transcript of oral argument (Docket Entry No. 13), supplemental memorandum of defendants in further support of defendants' motion to dismiss (Docket Entry No. 14), plaintiffs' supplemental memorandum in opposition to defendants' motion to dismiss (Docket Entry No. 15), and plaintiffs' second supplemental memorandum in opposition to defendants' motion to dismiss (Docket Entry No. 18), and in accordance with the foregoing memorandum, it is hereby ORDERED that defendants' motion to dismiss is GRANTED in part and DENIED without prejudice in part.

**II. Civil Action 86–3373**

AND NOW, this 15th day of July, 1987, upon consideration of Docket Entry No. 7, Docket Entry No. 10, Docket Entry No. 12, Docket Entry No. 13, Docket Entry No. 14, Docket Entry No. 15, and Docket Entry No. 18 of Civil Action No. 86–2865; and upon consideration of defendants' motion to dismiss (Docket Entry No. 5), plaintiffs' memorandum in opposition to defendants' motion to dismiss (Docket Entry No. 7), defendants' reply brief in further support of defendants' motion to dismiss (Docket Entry No. 8), plaintiffs' supplemental memorandum in opposition to defendants' motion to dismiss (Docket Entry No. 9) and defendants' supplemental memorandum in further support of defendants' motion to dismiss (Docket Entry No. 10), and in accordance with the foregoing memorandum, it is hereby ORDERED that defendants' motion to dismiss is GRANTED in part and DENIED without prejudice in part.