Richard M. PELL, James R. Miller and James O'Brien, Plaintiffs,

v.

Michael WEINSTEIN, Ernest Glanz, Richard Bober, Bruce M. Bloom, Philip Kagan, Philip Erard, Finkle & Ross, Certified Public Accountants, and Denis Lustig, a Certified Public Accountant, Defendants.

No. 3:CV–88–1905.

United States District Court, M.D. Pennsylvania.

March 20, 1991.

Norman D. Namey, Rosenn Jenkins & Greenwald, Wilkes–Barre, Pa., for plaintiffs.

Martin G. Roseman, Garman & Amdur, Rutherford, N.J., for defendant Bruce M. Bloom.

Stephen N. Dratch, Kenneth J. Isaacson, Greenberg Margolis Ziegler Schwartz Dratch Fishman Franzblau & Falkin, Roseland, N.J., for defendant Richard Bober.

Ralph E. Kates, III, The Sterling–Mezzanine, Wilkes–Barre, Pa., Usher Winslett, Thacher Proffitt & Wood, New York City, for defendant Philip Erard.

Jeffrey R. Lerman, Philadelphia, Pa., for defendant Finkle & Ross.

Jonathan L. Goldstein, Hellring Lindeman Goldstein Siegal Stern & Greenberg, Newark, N.J., for defendant Ernest Glantz.

Philip Kagan, Clifton, N.J., pro se.

Phil H. Leone, McKenny Liska & Leone, Red Bank, N.J., for defendant Denis Lustig.

Gerard A. Riso, Ruffa & Riso, New York City, Arthur H. Rainey, Dechert Price & Rhoads, Philadelphia, Pa., for defendant Michael Weinstein.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

This action was commenced by plaintiffs on November 26, 1988. In response to the defendants' motions to dismiss the complaint, plaintiffs filed an amended complaint on March 7, 1989, pursuant to Fed.R. Civ.P. 15(a). Once again, all of the defendants have filed motions to dismiss the complaint.

This action arises from the acquisition of PacStar Corporation, Inc., ("PacStar"), by a corporation known as Coated Sales, Inc., ("Coated Sales"). The plaintiffs, Richard Pell, James Miller and James O'Brien, were all shareholders in PacStar at the time of its acquisition. The complaint alleges that Coated Sales' acquisition of PacStar was completed through, and accompanied by, violations of federal and state securities laws, federal criminal statutes and other tortious activities.

## II. RELEVANT FACTS

The facts as alleged in the amended complaint may be summarized as follows:

PacStar and Coated Sales were in the textile business. Coated Sales publicly touted a corporate strategy of acquiring other textile companies and approached PacStar for that purpose. Subsequently, Coated Sales acquired PacStar through three agreements: an Agency Agreement dated July 1, 1986; an Employment Agreement dated July 1, 1986; and an Agreement and Plan of Merger ("Merger Agreement") dated March 2, 1987 (collectively "the Agreements").

Pursuant to the Agency Agreement, PacStar was to act as Coated Sales' exclusive sales agent for certain products. The Agency Agreement also granted Coated Sales the option to merge PacStar into Coated Sales or an affiliate by purchasing the PacStar stock for cash and 100,000 shares of Coated Sales restricted common stock. Coated Sales' option was exercisable at its discretion, throughout the term of the Agency Agreement, which expired on June 30, 1988.

At the time the Agency Agreement was entered into, plaintiff Richard Pell was the sole shareholder of PacStar. Pell agreed that his PacStar stock would remain subject to Coated Sales' option, that he would not dispose of his stock in any manner which would preclude the option and, in the event Pell chose to use his PacStar stock to compensate Timothy Lafferty and plaintiffs James Miller and James O'Brien, Pell agreed to transfer the stock to these employees "subject to the option".

On January 13, 1987 Coated Sales notified plaintiffs of its intention to exercise the option and sometime thereafter provided the plaintiffs with Coated Sales' Prospectus, dated July 10, 1986, and Form 10–Q for the period ending November 30, 1986. Pursuant to the Merger Agreement, on March 2, 1987, Coated Sales acquired from the plaintiffs and Lafferty the PacStar stock for cash and 100,000 shares of restricted Coated Sales common stock, as provided in the Agency Agreement. In or about May of 1988 plaintiffs first became aware of the existence of some amount of fraudulent activity in the internal operation of Coated Sales. Subsequently, on November 26, 1988, plaintiffs initiated this action.

The plaintiffs claim that they were induced into entering this obligation by misrepresentations contained in Coated Sales' Prospectus and Form 10–Q, and that the sale violated, inter alia, the Securities Act of 1933 ("1933 Act"), the Securities and Exchange Act of 1934 ("1934 Act") and state securities law. The plaintiffs maintain that each defendant occupied a key position or relationship with Coated Sales that facilitated the alleged scheme. Defendants Michael Weinstein, Ernest Glantz, Richard Bober, Bruce Bloom, Philip Kagan and Philip Erard ("officer/director defendants") were officers and/or directors of Coated Sales during the relevant periods. The remaining defendants, Finkle & Ross and Denis Lustig, were involved in the preparation and dissemination of Coated Sales' financial information.[1]

---

**1.** Denis Lustig performed auditing services for Coated Sales until he left Finkle & Ross in

### III. SALE OF UNREGISTERED SECURITIES

Counts I and III allege violations of Section 12(1) of the 1933 Act, 15 U.S.C. § 77*l*(1), by the officer/director defendants and Denis Lustig, as an aider and abettor, respectively. Section 12(1) creates civil liability for the offer or sale of an unregistered security in violation of Section 5 of the 1933 Act, 15 U.S.C. § 77e. Section 5 prohibits the use of any means or instruments of transportation or communication in interstate commerce or of the mails for the purpose of delivering or selling an unregistered security. The defendants maintain that this claim is barred by the relevant limitations period.

Section 13 of the 1933 Act, 15 U.S.C. § 77m, provides:

> No action shall be maintained ... to enforce a liability created under section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section ... 77*l*(1) of this title more than three years after the security was bona fide offered to the public.

Courts have interpreted the date of the violation as the later of the offer, sale or delivery of the stock. See *Doran v. Petroleum Management Corp.*, 576 F.2d 91, 93 (5th Cir.1978).

In the instant case, the limitations period began to run on March 2, 1987, when the securities were delivered to the plaintiffs, and the original complaint was not filed until November 22, 1988, more than one and a half years later. However, plaintiffs claim that the statute should be equitably tolled because they did not discover the alleged fraud until after the limitations period had expired. This argument lacks merit.

At no time were the plaintiffs led to believe that the securities were registered. In fact, the plaintiffs knew from the outset that the securities would not be registered. Moreover, although there is a split of authority concerning the application of the discovery rule and equitable tolling to the one-year limitation period governing nonregistration claims, a vast majority of the cases have concluded that the limitations period runs from the date of the violation regardless of whether the plaintiff knew of the violation. See *Cook v. Avien*, 573 F.2d 685, 691 (1st Cir.1978); *Gridley v. Cunningham*, 550 F.2d 551, 552–53 (8th Cir. 1977); *McCullough v. Leede Oil & Gas, Inc.*, 617 F.Supp. 384, 387 (W.D.Okl.1985); *Felts v. National Account System Assoc., Inc.*, 469 F.Supp. 54, 64 (N.D.Miss.1978); *Mason v. Marshall*, 412 F.Supp. 294, 299 (N.D.Tex.1974), aff'd, 531 F.2d 1274 (5th Cir.1976); *Ferland v. Orange Groves of Florida, Inc.*, 377 F.Supp. 690, 703 (M.D. Fla.1974); *Shuman v. Sherman*, 356 F.Supp. 911, 912–13 (D.Md.1973); *Moerman v. Zipco, Inc.*, 302 F.Supp. 439, 445 (E.D.N.Y.1969), aff'd, 422 F.2d 871 (2d Cir. 1970).

Based on these cases, this Court also concludes that neither the discovery rule nor equitable tolling are applicable to the one-year limitation period governing nonregistration claims because the language of the statute militates against such an application, and there is little justification for the application of this rule outside fraud-based causes of action. See *McCullough v. Leede Oil & Gas, Inc.*, 617 F.Supp. at 386–88.[2]

---

November 1984. A few years later, in or about May of 1987, he became the treasurer of Coated Sales.

**2.** Plaintiffs' claim would most likely also fail under the private offering exemption. Section 4 of the 1933 Act, 15 U.S.C. § 77d, provides certain exemptions from the registration requirements of Section 5. Section 4(2) provides an exemption for "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).

The applicability of Section 4(2) is dependent upon whether the particular class of persons affected needs the protection of the act. "An offering to those who are shown to be able to fend for themselves is not a public offering." *S.E.C. v. Int'l. Mining Exchange*, 515 F.Supp. 1062, 1071 (D.Colo.1981), citing, *S.E.C. v. Ralston Purina Co.*, 346 U.S. 119, 125, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953). Generally, a court will consider: 1) the number of purchasers, 2) their relationship to the issuer and each other, 3) the size of the offering and 4) the manner of

Therefore, since these claims were not asserted within the applicable limitations period, Counts I and III of the amended complaint will be dismissed.

## IV. SALE OF SECURITIES BY MEANS OF PROSPECTUS OR ORAL COMMUNICATION

Counts II and IV allege violations of Section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2), by the officer/director defendants and Denis Lustig, as an aider and abettor, respectively. The officer/director defendants and Lustig have made motions to dismiss these counts for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

### A. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338, 341 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3rd Cir.1979), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). ██ The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In Re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 422 (E.D.Pa.1981).[3]

### B. Section 12(2)

Section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2) imposes liability upon any person who:

offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, *by means of a prospectus or oral communication*, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.[4] (emphasis added).

Plaintiffs' amended complaint does not refer to any oral communication. They claim that untrue material facts were contained in and material facts were omitted from the prospectus, dated July 10, 1986, and Form 10–Q, for the period ending November 30, 1986, which were provided to them after January 13, 1987, the date Coated Sales notified the plaintiffs of its intention to exercise the option.

The defendants contend that by the time the prospectus and Form 10–Q came into existence, and were allegedly reviewed by the plaintiffs, Coated Sales had already obtained the contractual right to sell its stock to Pell, and to Miller and O'Brien to the extent that they would later acquire

the offering. *Goodman v. DeAzoulay*, 554 F.Supp. 1029, 1036 (E.D.Pa.1983); *S.E.C. v. Int'l. Mining Exchange*, 515 F.Supp. at 1071; *Doran v. Petroleum Management Corp.*, 545 F.2d 893, 900 (5th Cir.1977).

**3.** The Court will not consider matters outside the pleadings which were submitted by some of the parties. Therefore we need not treat the defendants' 12(b)(6) motions as motions for summary judgment. See Fed.R.Civ.P. 12(b). The Agreements, which were submitted by the plaintiffs with the amended complaint and were incorporated therein as exhibits, are necessarily part of the pleadings and will be considered by

the Court for the purpose of resolving the defendants' motions. Fed.R.Civ.P. 10(c). In addition, in the event of an inconsistency between averments in the complaint and the actual provisions of the Agreements, the Agreements will prevail. *Evans Products Co. v. J.H. Swanger*, 363 F.Supp. 808, 809 n. 1 (E.D.Pa.1973).

**4.** Section 2(10) of the 1933 Act defines a prospectus as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security." 15 U.S.C. § 77b(2).

PacStar stock from Pell. Simply stated, the defendants claim that the purchase of Coated Sales stock was completed on July 1, 1986, when the option was created, and since the prospectus and Form 10–Q both came into existence after July 1, 1986, the offer or sale could not have possibly been made "by means of a prospectus."

The plaintiffs argue that the sale did not occur until March 2, 1987, when the Merger Agreement was signed and the exchange actually occurred.

### C. Date of the Sale

■ The date of the "sale" of securities occurs when the parties become obligated to perform. *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972).

> 'Commitment' is a simple and direct way of designating the point at which, in the classical sense, there was a meeting of the minds of the parties; it, marks the point at which the parties obligated themselves to perform even if the formal performance of their agreement is to be after a lapse of time.

*Id.*

■ Plaintiffs contend that the Agency Agreement was fully revocable and, as such, could not be considered a "sale" of securities as a matter of law. They argue that the Agency Agreement did not obligate them to purchase Coated Sales stock, but merely created an option allowing Coated Sales to merge with PacStar upon the occurrence of various conditions. The only conditions plaintiffs refer to are contained in paragraphs 6(B), 12 and 13(H) of the Agency Agreement.

Paragraph 13(H) states, "The option contained herein shall terminate upon termination of the Agency Agreement or default." The Agency Agreement states at paragraph 13(A) that the termination date was June 30, 1988; however, it does not

contain any specific default provisions. Since Coated Sales exercised the option before the termination date, the plaintiffs were not empowered to renege on the transaction under this paragraph.

Likewise, paragraph 6(B) of the Agency Agreement did not release the plaintiffs from their binding commitment. Paragraph 6(B) provides:

> For the calendar year ended December 31, 1987, Coated Sales shall provide audited results of Booked Sales Orders, not later than February 28, 1988. PacStar shall have 30 days to review said results and to avail itself of Audit and Accounting procedures provided for in Paragraph 12 below. In the event that booked orders are less than Fifteen Million Dollars ($15,000,000) for the period from the date of this Agreement through December 31, 1987, then either party shall have the right to terminate the Agreement effective June 30, 1988, provided that written notice is given the other party no later than March 31, 1988.

Plaintiffs do not allege that booked sales were less than fifteen million dollars for this period. Moreover, under paragraph 6(B) plaintiffs were granted the right to terminate the agreement after December 31, 1987 and Coated Sales exercised its option on January 13, 1987, before this right accrued.[5]

Paragraph 12 merely provides for the arbitration of any dispute regarding the accounting of PacStar's gross profits. The fact that a disagreement regarding the calculation of PacStar's gross profits could be submitted for arbitration in no way relieved the plaintiffs from their obligations under the Agency Agreement. Arbitration of such a dispute would not have resulted in the termination of the Agency Agreement.

Thus, the terms of the Agency Agreement clearly reflect that plaintiffs, on July 1, 1986, granted to Coated Sales the option

---

**5.** Furthermore, it should be noted that by the terms of paragraphs 6(B) and 13(A) even if the option had not been exercised by Coated Sales prior to December 31, 1987 and booked sales were less than fifteen million dollars, plaintiffs were still bound by Coated Sales' option. Paragraph 6(B) provides that termination would be "effective June 30, 1988" upon written notice no later than March 31, 1988. Therefore, regardless of the volume of booked sales, the plaintiffs could not terminate the agreement any time before June 30, 1988 under this paragraph.

to merge with PacStar and purchase plaintiffs' PacStar stock in partial exchange for Coated Sales stock. As long as the Agency Agreement had not expired before Coated Sales elected to exercise the option, plaintiffs were legally obligated to sell their stock for cash and Coated Sales stock. The material terms were agreed to and the price, including the specific allocation of cash and Coated Sales stock, was set forth in detail in the Agency Agreement, which also included, in paragraph 13(E), an adjustment as to the amount of Coated Sales stock to be provided to plaintiffs in the event that at the date of the merger the value of Coated Sales stock had fallen below $7.00 per share.

It is clear from the terms of the Agency Agreement that the plaintiffs were committed to the merger, which included the exchange of Coated Sales stock, until the expiration of the Agency Agreement on June 30, 1988. In short, the plaintiffs lacked the power or authority to back out of the merger with Coated Sales at any time prior to the expiration date.

Therefore, the plaintiffs were obligated to perform under the Agency Agreement from the time they entered into the Agency Agreement on July 1, 1986 up until the termination date of June 30, 1988. Accordingly, since this would place the date of the sale of the Coated Sales stock on July 1, 1986, before the prospectus and Form 10–Q came into existence, the sale could not possibly have been made by means of a prospectus as required by Section 12(2), 15 U.S.C. 77*l*(2).

The plaintiffs' reliance on *S.E.C. v. National Student Marketing Corp.*, 457 F.Supp. 682 (D.D.C.1978) is misplaced. *National Student* involved a merger agreement and sale of stock which was dependent upon the occurrence of the merger. Before the parties entered into the merger agreement they determined the price and number of shares of stock to be involved in the post-merger transaction. The merger agreement provided for various conditions precedent to the occurrence of the merger including, inter alia, the receipt by each party of a "comfort letter" detailing the financial condition of the other party. The comfort letter provided by the defendant at the closing did not conform with the requirements of the merger agreement and indicated that the nine month financial statement used to secure shareholder approval for the merger was inaccurate. However, relying on the defendant's assurances that the stated adjustments in the comfort letter were the only ones to be made to the company's financial statements and that earnings for the year would be as predicted, the closing was consummated.

The S.E.C. filed suit against the defendants alleging fraud in the sale of the stock after the merger based on the failure to disclose to the shareholders the adjustments contained in the comfort letter. The defendants contended that the parties became committed to the sale of stock when they agreed on the price and number of shares to be sold following the merger. The Court held that the sale did not occur until after the merger was consummated because the parties had no expectation or duty to proceed if the merger was aborted.

> Such a conditional commitment is not what the courts had in mind when setting the time of commitment as the critical point for antifraud analysis. It is not some magical incantation of "commitment" that sets the point at which disclosure is no longer mandated, but rather the nature of the commitment. In order to prevent the unfair use of material inside information, *the commitment must irrevocably bind the parties to their agreement, without regard to further action or inaction on their part.*

*Id.* at 704 (emphasis added).

In *National Student* the defendants were not irrevocably bound to the stock sale because there were bilateral conditions for the merger, and one of those conditions was not complied with. In the instant case, it is beyond question that the plaintiffs were irrevocably bound by the Agency Agreement to purchase the stock at Coated Sales' option regardless of whether the plaintiffs had second thoughts about the transaction.

Therefore, since the date of the sale was July 1, 1986, plaintiffs cannot claim that the sale was made by means of the prospectus or Form 10–Q, both of which came into existence after July 1, 1986, and Counts II and IV of the amended complaint will be dismissed.

## V. SECURITIES FRAUD

Several of the plaintiffs' claims sound in fraud: Count V alleges violations of Section 17 of the 1933 Act, 15 U.S.C. § 77q, Section 10(b) of the 1934 Act, 15 U.S.C. § 78j, and Section 1–401 of the Pennsylvania Securities Act, 70 P.S. § 1–401, by the officer/director defendants; Count VII asserts a claim based on common law fraud against the officer/director defendants and Lustig; and Count VIII asserts a claim based on negligent misrepresentation against the officer/director defendants and Lustig.

All of the defendants named in these counts have made motions to dismiss these counts for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

### A. Reliance

The one common thread which permeates all of the plaintiffs' fraud-based claims is reliance. See *Zlotnick v. TIE Communications*, 836 F.2d 818, 821 (3d Cir.1988) (reliance is a necessary element for a cause of action under section 10(b) of the 1934 Act, 15 U.S.C. § 78j); *Goodman v. Moyer*, 523 F.Supp. 35, 38 (E.D.Pa.1981) (70 P.S. § 1–401 and section 10(b) of the 1934 Act require similar elements of proof); *McDaniel v. Compania Minera de Cortes, Etc.*, 528 F.Supp. 152, 166 (D.Ariz.1981) (reliance is an element of a private cause of action under section 17 of the 1933 Act, 15 U.S.C. 77q); *English v. Lehigh County Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981) (reliance is an element of a cause of action based on negligent misrepresentation); *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976) (reliance is an element of common law fraud).

■ The untrue or omitted material facts which the plaintiffs claim they relied upon in making their decision to accept Coated Sales stock in exchange for their PacStar stock are contained in the prospectus and Form 10–Q. However, as noted earlier, the prospectus, which was dated July 10, 1986, and Form 10–Q, which was for the period ending November 30, 1986, did not even exist on July 1, 1986, the date the plaintiffs committed themselves to the transaction by entering into the Agency Agreement. Furthermore, even the plaintiffs admit that they did not review the prospectus and Form 10–Q until after Coated Sales notified them of its intention to exercise the option on January 13, 1987.

As established above, even if the plaintiffs were not satisfied with the information contained in the prospectus and Form 10–Q, they were powerless to avoid the transaction which they committed to on July 1, 1986 once Coated Sales chose to exercise the option. Therefore, plaintiffs could not possibly have relied on the prospectus or Form 10–Q in reaching their decision to enter into the transaction with Coated Sales.

Since the date of the sale was July 1, 1986, plaintiffs cannot, as a matter of law, claim that they relied on the prospectus or Form 10–Q, both of which came into existence after July 1, 1986, in reaching their decision to purchase Coated Sales stock and Counts V, VII and VIII of the amended complaint will be dismissed.

## VI. BREACH OF CONTRACT

Count VI seeks to hold the officer/director defendants liable for breach of contract. The amended complaint alleges that the "officer/director defendants, as controlling persons of Coated Sales, failed to perform the obligations required by the terms and conditions of the Agreements and the acquisition contemplated thereby because of the failure of consideration and their fraudulent activities, and thus breached the Agreements."

■ An individual corporate officer, however, is not liable for the breach of contract by the corporation. "Whenever a corporation makes a contract it is the con-

tract of the legal entity of the artificial being created by the charter, not the contract of the individual members." *Bala Corporation v. McGlinn*, 295 Pa. 74, 79, 144 A. 823, 824 (1929). "Where a party contracts with a corporation through a corporate agent who acts within the scope of his authority and reveals his principal, the corporate principal alone is liable for breach of the contract." *Daniel Adams Associates v. Rimbach Publishing, Inc.*, 360 Pa.Super. 72, 79–80, 519 A.2d 997, 1000–01 (1987); see *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 373, 246 A.2d 407, 409 (1968); *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 56, 489 A.2d 828, 837 (1985).

■ Since, plaintiffs do not allege that Coated Sales was a sham or the alter ego of the officer/director defendants, they are unable to pierce the corporate veil. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983). Therefore, this breach of contract claim is legally insufficient and, as such, is subject to dismissal.[6] However, plaintiffs will be provided the opportunity to amend this Count to comply with the requirements of the law, if possible.

## VII. RICO

Count IX asserts a civil RICO (Racketeer Influenced and Corrupt Organizations Act) claim against the officer/director defendants. Although not specifically stated in the amended complaint, plaintiffs' RICO claim appears to be based upon a violation of 18 U.S.C. § 1962(c), which provides that:

It shall be unlawful for any person employed by or associated with any enterprises engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

The officer/director defendants contest plaintiffs' RICO claim on several grounds.

### A. The Enterprise Element

A claim under Section 1962(c) requires that the culpable "person" engaged in conduct of an "enterprise" through a pattern of racketeering activity. See *Sedima, S.P.R.L. v. Imrex Company*, 473 U.S. 479, 500, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346, 361 (1985).

■ In the Third Circuit, the culpable "person" and the "enterprise" must be separate and distinct entities. *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 678 (3d Cir.1988); *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1359 (3d Cir.1987). That is, the person charged with the RICO violation under § 1962(c) cannot be the same entity as the alleged enterprise. *B.F. Hirsch v. Enright Refining Corp.*, 751 F.2d 628, 633 (3d Cir. 1984). Since a corporation cannot operate except through its officers and agents, a corporate "enterprise" and its employees are not separate and distinct for the purposes of § 1962(c). *Tarasi v. Dravo Corp.*, 613 F.Supp. 1235, 1237 (W.D.Pa.1985).

[A] corporation can only operate through its officers and agents. Thus, for the purpose of ascertaining § 1962(c) liability, [the chief executive officer of the corporation] is the same entity as and should be treated in the same manner as [the corporate defendant].

*Ellis v. Merrill Lynch & Co.*, 664 F.Supp. 979, 982 (E.D.Pa.1987). See *PetroTech Inc., v. The Western Company of North America*, 824 F.2d 1349, 1359 (3d Cir.1987) (a corporation is not liable under § 1962(c) for the predicate acts committed by its employees); *Newfield v. Shearson Lehman Bros.*, 699 F.Supp. 1124, 1126–27 (E.D.Pa.1988) ("Since Shearson is a corporation, which cannot act but through its agents, plaintiff [in alleging that the enterprise consisted of Shearson and two of its employees] has in effect pleaded the existence of an association-in-fact of a corporation with its agents ... This will not satisfy the nonidentity requirement."); *Medallion TV Enterprises, Inc. v. SelecTV of*

---

**6.** In their opposition brief, plaintiffs did not rebut the officer/director defendants arguments for dismissal of this count.

*California, Inc.,* 627 F.Supp. 1290, 1294–95 (C.D.Cal.1986); *Waldo v. North American Van Lines, Inc.,* 669 F.Supp. 722, 737–39 (W.D.Pa.1987); *Minnesota Odd Fellows Home Foundation v. Engler & Budd Co.,* 630 F.Supp. 797, 800 (D.Minn.1986); cf. *Chambers Development Co. v. Browning-Ferris Industries,* 590 F.Supp. 1528, 1542–42 (W.D.Pa.1984) (a corporation and its agents are not capable of conspiracy together because they are legally the same person.)

 Significantly, plaintiffs do not allege that the officer/director defendants committed acts of racketeering activity in their individual capacities. Instead, they allege that the officer/director defendants acted "[a]s officers of Coated Sales." (Amended Complaint at ¶ 143). Thus, the alleged acts of the officer/director defendants were clearly the alleged acts of Coated Sales. *See Girard v. 94th Street and Fifth Avenue Corp.,* 530 F.2d 66, 76 (2d Cir.1975). Consequently, because the amended complaint alleges that the "enterprise" is Coated Sales and that the culpable persons are the officer/director defendants, each claimed to have been officers and/or directors and controlling persons of Coated Sales, the plaintiffs have failed to allege a separate enterprise.

Since Coated Sales, the claimed RICO enterprise, is not separate and distinct from the officer/director defendants, the RICO allegations contained in Count IX of the amended complaint are legally insufficient.

### B. Predicate Acts

The predicate racketeering activity central to the plaintiffs' RICO claim is the alleged federal securities fraud. Since plaintiffs' securities fraud claims have been dismissed, they cannot serve as RICO predicate acts. See *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 151 (4th Cir. 1987) *Nutis v. Penn. Merchandise Corp.,* 610 F.Supp. 1573 (E.D.Pa.1985) (since plaintiff failed to state a securities fraud cause of action, the claim could not serve as a RICO predicate offense); see also *Hill v. Equitable Bank,* 655 F.Supp. 631, 646 (D.Del.1987); *Alfaro v. E.F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1119 (E.D.Pa.1985); *In re Catanella and E.F. Hutton and Co., Securities Litigation,* 583 F.Supp. 1388 (E.D.Pa.1984).

Although plaintiffs also claim that the officer/director defendants used the mails and telecommunications "to perpetrate a fraud upon the plaintiffs" (Amended Complaint at ¶¶ 145(a) and (b)), the essence of the RICO claim is the alleged fraudulent sale of Coated Sales stock. Therefore, the dismissal of the securities fraud claims necessitates the dismissal of the RICO claim.

> [S]ince our dismissal of the securities fraud claim so undercut the existence of any "racketeering activity" in the complaint, we affirm the district court's dismissal of plaintiff's RICO claim.

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 19–20 (2d Cir.1983).

As to violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, plaintiffs do not allege that the officer/director defendants committed an "indictable" act of mail or wire fraud as required by 18 U.S.C. § 1961(1). Plaintiffs do not properly allege a scheme to defraud and the use of the mails or wires in furtherance of the scheme, *United States v. Pisani,* 773 F.2d 397, 409 (2d Cir.1985), or the officer/director defendants' participation and specific intent to defraud. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49 (2d Cir.1987).

 Plaintiffs' sole allegation concerning a mail or wire fraud offense is that "materially inaccurate, incomplete and misleading information audited by accountant defendants was communicated to plaintiffs by means of the United States mails and telephonic communications." (Amended Complaint at ¶ 55.) Plaintiffs do not state who communicated this information, what was communicated, or when and how it was communicated. Indeed, plaintiffs do not even claim that the information was "communicated" by any of the officer/director defendants. Plaintiffs have clearly not alleged that the officer/director defendants committed "indictable" acts of criminal mail or wire fraud.

**1118**

■ Therefore, because the Court has dismissed the plaintiffs' claims of securities fraud, which serve as the essence of the RICO claim, and the plaintiffs have failed to allege any other indictable acts, Count IX of the amended complaint will be dismissed.[7]

## VIII. FRAUD

■ Count XI asserts a claim based on common law fraud against Finkle & Ross and Denis Lustig ("accountant defendants"). The amended complaint alleges that the financial statements audited by the accountant defendants were false and fraudulent, that the accountant defendants knew that the financial statements were false and that the plaintiffs justifiably relied on these false financial statements when they entered into the agreements with Coated Sales.[8] The accountant defendants maintain that the amended complaint fails to state the alleged fraud with sufficient particularity as required by Fed.R. Civ.P. 9(b).[9] The Court agrees.

■ In order to satisfy the pleading requirements of Rule 9(b), "a party must at a minimum, 'state the time, place and content of the false misrepresentation, the fact misrepresented and what was obtained or given up as a consequence of the fraud.'" *DuSesoi v. United Refining Co.*, 540 F.Supp. 1260, 1272 (W.D.Pa.1982), quoting, *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 349 (E.D.Pa.1976). Even where the plaintiff's allegations of fraud are based on information and belief, supporting facts on which this belief is

---

7. Assuming that plaintiffs have properly alleged predicate acts of securities, mail and wire fraud, the amended complaint *does not allege a* "pattern of racketeering." *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, supra.

 The legislative history supports the view that two *isolated acts of racketeering activity do* not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business *normally requires more than* one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Reg. 91–617, p. 158 (1969) (emphasis added). *Id.* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, 87 L.Ed.2d at 358 n. 14.

 The Third Circuit has construed the "continuity plus relationship" requirement as calling for an inquiry into the extent of racketeering activity on a case by case basis. *Barticheck v. Fidelity Union Bank/First Nat. Bank*, 832 F.2d 36, 39 (3d Cir.1987). The factors relevant to this inquiry are the "number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.* at 39.

 The target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time. *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63, 66–67 (3d Cir.1987).

 Plaintiffs do not allege criminal activity which posed "a series of injuries over a significant period of time." Plaintiffs claim only one injury, their purchase of Coated Sales stock induced by alleged fraudulent financial information provided in the Form 10–Q and prospectus. The alleged criminal activity had only one objective, the acquisition of PacStar shares by Coated Sales, and was directed at only four individuals. In addition, the alleged use of the means of interstate commerce in providing plaintiffs with the Form 10–Q and prospectus, which for all intents and purposes is one act, constitutes the jurisdictional prerequisite for the federal securities fraud and mail or wire fraud acts. No other misrepresentation or fraudulent conduct is identified in relation to the alleged scheme. Therefore, the activity complained of, involving the sole act of providing the Form 10–Q and prospectus, does not amount to a "pattern of racketeering activity." Compare *Barticheck v. Fidelity Union Bank*, 832 F.2d 36 (3d Cir.1987) (holding that a scheme to defraud investors involving twenty-three acts directed towards twenty victims alleged a pattern of racketeering activity); *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 667 (3d Cir.1988) (holding that a scheme to induce employees to retire early involving thirty-two acts directed towards thirty-two victims alleged a pattern of racketeering activity).

8. To the extent that this fraud claim is based on financial information given to the plaintiffs after July 1, 1986, the date the plaintiffs entered into the Agency Agreement with Coated Sales and committed themselves to purchase Coated Sales stock, it must fail because the plaintiffs could not have relied on information provided to them after they effectively purchased the Coated Sales stock. See Section V.

9. "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

founded must be set forth in the complaint. *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985).

The amended complaint fails to set forth any specifics regarding the alleged fraud. In particular, the plaintiffs do not even attempt to identify the errors in the financial statements or the amount of any inaccuracies, nor do they identify any specific accounting principle or auditing standard which was violated. Rather, the plaintiffs simply state that the financial statements were false and that the Accountant defendants knew that they were false. This clearly does not satisfy the requirements of Rule 9(b). See *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96 (3d Cir.1983) (affirmed dismissal of fraud claim against an accounting firm for failure to identify the particular accounting practices allegedly violated).

Therefore, plaintiff will be permitted to amend Count XI of the amended complaint to conform with the requirements of Rule 9(b) as set forth above.

## IX. BREACH OF THIRD PARTY BENEFICIARY CONTRACT

Count X of the amended complaint alleges breach of a third party beneficiary contract by Finkle & Ross. Plaintiffs contend that they were injured by the alleged breach of Coated Sales' contract with Finkle & Ross in accordance with which Finkle & Ross was obligated to provide accurate statements of Coated Sales' financial position.

Under Pennsylvania law, "a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; *the obligation to the third party must be created, and must affirmatively appear, in the contract itself." Dept. of General Services v. Celli-Flynn*, 115 Pa.Commw. 494, 499, 540 A.2d 1365, 1368 (1988), citing *Spires v. Hanover Fire Insurance Co.*, 364 Pa. 52, 57, 70 A.2d 828, 830–31 (1950); *Schmidt v. Leader*

*Dogs for the Blind, Inc.*, 544 F.Supp. 42, 45 (E.D.Pa.1982).

The plaintiffs do not allege that any obligation to them affirmatively appears in the Coated Sales contract with Finkle & Ross. Instead, they argue that as potential investors they were contemplated users of the financial statements and, therefore were third party beneficiaries to the contract. This, however, falls short of the requirements for a third party beneficiary claim under Pennsylvania law. Accordingly, Count X of the amended complaint will be dismissed.

## X. PROFESSIONAL NEGLIGENCE

Plaintiffs have asserted claims based on the sweeping allegation that Finkle & Ross and Denis Lustig failed in their obligation to provide accurate accounting and auditing services for Coated Sales. Counts XII and XIII allege negligence and gross negligence, respectively, on the part of Finkle & Ross and Denis Lustig in the performance of accounting and auditing services for Coated Sales. The plaintiffs seek to recover on these claims based on the theory that they were the contemplated and foreseeable users of Coated Sales financial statements with respect to which Finkle & Ross and Denis Lustig rendered professional services. Significantly, the plaintiffs do not allege that they had any contractual relationship with these defendants.

In Pennsylvania, an action for professional negligence cannot be maintained unless there is privity of contract between the parties. See *Landell v. Lybrand*, 264 Pa. 406, 107 A. 783 (1919) (where plaintiff-shareholder claimed that the corporation's financial statements were incomplete and misleading, the Pennsylvania Supreme Court held that, as a matter of law, the plaintiff failed to state a claim against the corporation's accountants because privity of contract did not exist); *Hartford Accident and Indemnity Co. v. Parente, Randolph, Orlando, Carey and Associates*, 642 F.Supp. 38 (M.D.Pa.1985) (citing *Landell*, Judge Caldwell dismissed third party complaint filed against accounting firm for lack of privity); *Guy v. Liederbach*, 501

Pa. 47, 459 A.2d 744 (1983) (Pennsylvania Supreme Court reversed Superior Court's holding that privity was not required to maintain a professional negligence action against an attorney); *Raymond Rosen & Co. v. Seidman & Seidman,* —— Pa.Super. ——, 579 A.2d 424 (1990) (court affirmed dismissal of malpractice action against certified public accountant for lack of privity).

The plaintiffs argue that the current business environment demands the establishment of a new benchmark for accountant liability in Pennsylvania which abandons the requirement of privity. However, this is an argument more properly presented to the Pennsylvania courts. It is beyond question that under current Pennsylvania law, privity is required in an action for professional negligence. Therefore, since Pennsylvania does not recognize the theories of liability set forth in Counts XII and XIII, these counts will be dismissed.

We therefore enter the following Order.

### ORDER

For the reasons stated in the accompanying memorandum, it is Ordered that:

1. Counts I, II, III, IV, V, VII, VIII, IX, X, XII, XIII of plaintiffs' amended complaint filed on March 7, 1989 are dismissed.

2. Plaintiffs are granted leave to amend Counts VI and XI of the amended complaint in accordance with the attached memorandum. Failure to amend these counts within twenty days of receipt of this Order will subject them to dismissal.